UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEPHONA STOKES, on behalf of minor K.F. (Pro Se),<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION AND MASSACHUSETTS DEPARTMENT OF EDUCATION,<br><br>        Defendants. | CIVIL ACTION<br>NO. 05-11764-RWZ |

### MEMORANDUM OF LAW OF THE MASSACHUSETTS DEPARTMENT OF EDUCATION IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### INTRODUCTION

Plaintiff Stephona Stokes, on behalf of minor K.F. (Pro Se), ("plaintiff" or "Stokes") has brought an action purportedly against the United States Department of Education and the Massachusetts Department of Education, the latter a state agency. Plaintiff's Complaint appears to allege an unspecified violation of the "No Child Left Behind" statute by the Massachusetts Department of Education ("MADOE"). P.L. 107-110, codified at 20 U.S.C. §§ 6301-6339 (Title I, Part A); 20 U.S.C. §§ 6421-6472 (Title I, Part D); 20 U.S.C. §§ 6601-6651 (Title II, Part A); 20 U.S.C. §§ 6751-6777 (Title II, Part D); 20 U.S.C. §§ 6811-6871 (Title III, Part A); 20 U.S.C. §§ 7101-7165 (Title IV, Part A); 20 U.S.C. §§ 7201-7217e (Title V, Part A) ("NCLB"). However, no NCLB violation is alleged because, as a review of the Complaint and associated papers will demonstrate, the gravamen of plaintiff's Complaint involves an action taken by the

Massachusetts Board of Education under state law, not NCLB; consequently, no federal question is presented.

Understanding the precise nature of plaintiff's claim is unnecessary, however, because pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), even if plaintiff has alleged a violation of federal law, defendant MADOE is entitled to an order dismissing plaintiff's Complaint on the grounds that it is barred by the Eleventh Amendment to the United States Constitution. Finally, even if plaintiff had alleged a cognizable violation of federal law, which she has not, and even if the Eleventh Amendment did not apply, which it does, no private right of action exists under NCLB. Consequently, plaintiff's action should be dismissed in its entirety.

## STATUTORY SCHEME

### NCLB

The federal No Child Left Behind statute has as its purpose, among other things, "ensuring that high-quality academic assessments, accountability systems, teacher preparation and training, curriculum and instructional materials are aligned with challenging State academic standards so that students, teachers, parents, and administrators can measure progress against common expectations for student academic achievement[.]" 20 U.S.C. § 6301(1). It is a comprehensive reform statute aimed at strengthening elementary and secondary schools. Association of Community Organizations for Reform Now v. New York City Department of Education, 269 F.Supp.2d 338, 340 (S.D.N.Y 2003) ("ACORN"). States and local educational agencies ("LEAs") are authorized to receive federal funds to carry out the statute's purposes. States receiving NCLB funds must have the State educational agency "submit to the [Secretary of Education] a plan" that meets certain requirements. 20 U.S.C. §§ 6311(a)(1), (b)(1)(A). See

2

ACORN, 269 F. Supp. 2d at 341.

LEA's must comply with the requirements contained in section 6316 of the statute. Id. Under section 6316, LEAs receiving NCLB funds must "use the State academic assessments . . . described in the State plan to review annually the progress of each school served . . . to determine whether the school is making adequate yearly progress . . . ." 20 U.S.C. § 6316(a)(1)(A). What constitutes "adequate yearly progress" is defined by the state and in accordance with the statute. A school which fails to make adequate yearly progress for two consecutive years is to be designated for "school improvement." 20 U.S.C. § 6316(b)(1)(A). See ACORN, 269 F.Supp.2d at 341. Schools that continue to fail to make adequately yearly progress for two years thereafter must be identified by the LEA for "corrective action." 20 U.S.C. § 6316(b)(7)(C). If a year later, the school fails again to make adequate yearly progress, it is designated for "restructuring." 20 U.S.C. § 6316(b)(8)(A). ACORN, 269 F.Supp.2d at 341. Where a school receives any of these three designations, the statute's transfer and parental notification provisions are triggered. It is these latter provisions which plaintiff appears at first glance to argue have been violated.

State Charter School Law

The Commonwealth's charter school law appears at G.L. c. 71, § 89. The statute provides for the creation of a certain number of charter schools, which are public schools designed to encourage innovative educational practices. After granting a charter, the Board of Education may revoke a school's charter if the school has not fulfilled any conditions imposed by the Board of Education in connection with the grant of the charter or the school has violated any provisions of its charter. G.L. c. 71, § 89(kk).

The Board's regulations flesh out the requirements for revocation of a charter. 603 C.M.R. § 1.13 specifies that the Board may suspend or revoke a charter for "cause," which includes but is not limited to the following:

. . .

(b) failure to comply substantially with the terms of the charter, with any of the applicable provisions of M.G.L. c. 71, or with any other applicable law or regulation;

(c) financial insolvency;

. . .

(e) fraud or gross mismanagement on the part of charter school administrators or Board of Trustees;

. . .

(g) failure to fulfill any conditions imposed by the Board of Education in connection with the grant of a charter.

Before revoking a charter, the Board must notify the charter school in writing that the Board intends to revoke the charter. 603 C.M.R. § 1.13(2). Upon receiving notice of intent to revoke the charter, the school may request a hearing, which then takes place according to G.L. c. 30A, § 13 and 801 C.M.R. § 1.00. After the hearing and issuance of a recommended decision by the hearing officer, the Board then votes on whether to revoke the school's charter.

## FACTUAL ALLEGATIONS

The factual allegations are set forth in plaintiff's handwritten Complaint. The only allegation contained therein that appears to be asserted against the MADOE is that MADOE "did not respond to parents questions regarding options/choice or questions raised regarding learning disabled students. A violation of NCLB." Complaint, ¶ 6. The section of NCLB allegedly

4

violated appears to be Title I. Complaint, ¶ 4. ("[t]he LEA [local education agency] must offer more than one choice to students eligible under Title I. Law further states 'notify all parents of students . . . as having to provide choice in an easy to understand format.'").

Further review of the Complaint and papers filed with it, however, indicates that the action taken by the Massachusetts Board of Education and referred to at paragraph 4 of the Complaint was in fact the revocation of Roxbury Charter High Public School's charter under state law, not under federal law. See page numbered 16 of the attachments to plaintiff's Complaint ("[moved]: that the Board of Education, in accordance with General Laws chapter 71, section 89; General Laws chapter 30A, section 13; and 603 CMR 1.00, hereby state its intent to revoke the public school charter granted to the Roxbury Charter High School effective June 30, 2005, . . .")[1] The NCLB choice and notification provisions to which plaintiff refers, and which plaintiff alleges were violated, are triggered only when the designations under federal law, described above, have been made; plaintiff has not alleged, nor has there been, any such designation in connection with the Roxbury Charter High School.

## ARGUMENT

I.   **THE STANDARDS FOR GRANTING A MOTION PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6).**

The district court "has authority to examine and resolve the issues surrounding any

---

[1] G.L. c. 71, § 89, is the Commonwealth's charter school statute; G.L. c. 30A, § 13, is part of the state's Administrative Procedure Act; and 603 CMR § 1.00, et seq., are the regulations of the Massachusetts Department of Education. Clearly, then, the gravamen of plaintiff's Complaint arises out of an action taken by the Board of Education under state, not federal, law.

5

motions challenging the jurisdiction of the court." Daniel v. American Board of Emergency Medicine, 988 F. Supp. 127, 150 (W.D.N.Y. 1997); Thornhill Publishing Co. v. General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979). In "evaluating a Rule 12(b)(1) motion, . . . the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings. . . ." Daniel, 988 F. Supp. at 151.

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957). See Council for Employment and Economic Use v. WHDH Corp., 580 F.2d 9 (1st Cir. 1978), cert. denied, 440 U.S. 945 (1979). For purposes of this motion only, plaintiff's factual allegations must be taken as true and construed in the light most favorable to her. Green v. State Bar of Texas, 27 F.3d 1083 (5th Cir. 1994). However, "[t]he strict standard applied to 12(b)(6) motions is not . . . without its limits. In order to survive a 12(b)(6) motion, a complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." Helen Brett Enterprises v. New Orleans Metropolitan Convention and Visitors Bureau, Inc., 1996 WL 346314, 1996-2 Trade Cas. ¶ 71,529, at 77,797 (E.D. La 1996). Further, the district court "will not assume facts that the plaintiff has not alleged and is not required to accept the legal conclusions either alleged or inferred by the plaintiff from the pleaded facts." Id.

## II. PLAINTIFF'S COMPLAINT DOES NOT ALLEGE A VIOLATION OF ANY FEDERAL LAW, INCLUDING NCLB.

Plaintiff's Complaint, when read in conjunction with the attachments thereto, fails to allege a violation of federal law. Rather, the gravamen of plaintiff's Complaint is action taken

by the state Board of Education to revoke the charter of the Roxbury Charter High Public School under the state's charter school law, G.L. c. 71, § 89. See attachment to Complaint at page numbered 16 (motion to revoke charter of Roxbury Charter High School under G.L. c. 71, § 89); see also Complaint ¶ 4 ("[o]n December 21, 2004, the MA Dept. of Education voted to revoke the charter of Roxbury Charter High Public School"). No action was taken by the Board of Education under NCLB relative to Roxbury Charter High Public School. Consequently, the provisions of that law are irrelevant to plaintiff's Complaint. Plaintiff appears to be arguing that the revocation of the school's charter under state law somehow triggered an obligation under federal law. This is not the case, as an examination of section 6316 will demonstrate. Under section 6316, it is the repeated failure to make adequate yearly progress, as defined by the state, that then triggers the various designations. The charter revocation under state law does not constitute a designation under section 6316 of NCLB. Therefore, since plaintiff's Complaint, properly read, effectively alleges no violation of federal law, the Court lacks subject matter jurisdiction over this matter and should dismiss the Complaint with prejudice.

### III.   PLAINTIFF'S COMPLAINT AGAINST MADOE, A STATE AGENCY, IS BARRED BY THE ELEVENTH AMENDMENT.

Even if the Complaint were to allege a violation of federal law, it nonetheless seeks damages and an injunction against MADOE, a state agency. Consequently, the Complaint is barred by the Eleventh Amendment to the United States Constitution.[2] In general, the Eleventh Amendment bars suits against the state, not only when the state itself is named as a defendant,

---

[2] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

but also when its agencies are sued. See Pennhurst v. State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984) ("[i]t is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Accord, Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam) ("[t]here can be no doubt . . . that suit against the state and its Board of Corrections is barred by the Eleventh Amendment") (emphasis added). As the Supreme Court stated in Dugan v. Rank, 372 U.S. 609, 620 (1963), "[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain or interfere with the public administration,' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" 372 U.S. at 620 (citations omitted). Where, as here, a plaintiff actually names a state agency as a defendant, the Eleventh Amendment applies in its full force, "regardless of the nature of the relief sought,"[3] and all claims against such defendant should be dismissed. See Pennhurst, 465 U.S. at 100; Alabama v. Pugh, 438 U.S. 781 (1978).

MADOE is a state agency and therefore an arm of the state. Mass. G.L. c. 15, § 1 ("[t]here shall be a department of education . . . which shall be under the supervision and control of a board of education."). See Stock v. Massachusetts Hospital School, 392 Mass. 205, 207 n.3 (1984) ("[t]he department [of education] is the State education agency charged with implementing G.L. c. 71B, concerning children with special needs."), cert. denied, 474 U.S. 844 (1985). Where a subordinate entity is sued in federal court and claims that it operates as an arm

---

[3] Plaintiff's scattered prayers for relief purport to seek not only damages, but also some form of injunctive relief pertaining to charter schools generally and that "the Court insist LEA respond." Complaint, ¶ 9. Under Pennhurst and Alabama, those prayers do not save the Complaint. Furthermore, MADOE is not an "LEA" and no "LEA" is a party to this action. Consequently, there is no entity against which that relief, even if proper, could be granted.

of the state for Eleventh Amendment purposes, courts take a number of factors into account in determining whether the entity may properly claim the benefit of the state's Eleventh Amendment immunity. Those factors include whether the entity "(1) performs an 'essential' or 'traditional' governmental function, as opposed to a nonessential or merely proprietary one; (2) exercises substantial autonomy over its internal operations; (3) enjoys meaningful access to, and control over, funds not appropriated from the State treasury; (4) possesses the status of a separate 'public corporation'; (5) may sued and be sued in its own name; (6) can enter into contracts in its own name; (7) has been granted a state tax exemption on its property; or (8) has been expressly debarred from incurring debts in the State's name or behalf." University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200, 1205 (1st Cir. 1993). Application of these factors demonstrates that MADOE is an arm of the state for purposes of the Eleventh Amendment.

As noted, the MADOE is a state agency created by statute, and not a public corporation. Mass. G.L. c. 15, § 1 ("[t]here shall be a department of education . . . which shall be under the supervision and control of a board of education."). Under its enabling statute, the department is "under the supervision and control of a board of education." G.L. c. 15, § 1. The members of the Board of Education, who are defined by statute, G.L. c. 15, § 1E, appoint the commissioner of education. G.L. c. 15, § 1F. The Board can, by majority vote, remove the Commissioner. Id. The Commissioner also exercises supervision and management over the Department, G.L. c. 69, § 1A, and is vested with significant powers and duties pursuant to statute with respect to public education, id., a quintessential government function. Likewise, the Board of Education is vested by the statute with various specific and general duties related to education in the

9

Commonwealth. G.L. c. 69, § 1B. With respect to budgeting, the Commissioner must "propose a budget to the [Board of Education] . . . Upon approval by the [B]oard, the [C]ommissioner shall submit the [MADOE's] budgetary proposals simultaneously to the house and senate committees on ways and means, the joint committee on education, arts and humanities, and to the secretary of administration and finance." G.L. c. 69, § 1A. Any final decision of the MADOE in an adjudicatory proceeding is appealable to Superior Court pursuant to G.L. c. 30A, § 14. Any judgment rendered against the MADOE would be an obligation of the Commonwealth. MADOE is therefore an arm of the state and entitled to invoke the immunity from suit provided by the Eleventh Amendment. See Braintree Baptist Temple v. Holbrook Public Schools, 616 F. Supp. 81, 91 (D. Mass. 1984) (motion of MADOE and Massachusetts Board of Education to dismiss entire complaint allowed on Eleventh Amendment grounds).

The Commonwealth's Eleventh Amendment immunity can only be overcome when it has waived its immunity or when the Eleventh Amendment has been expressly abrogated by Congress. In this case, there is no contention, nor could there be such a contention, that the Commonwealth has waived its immunity. Therefore, plaintiff would have to rely on the theory of Congressional abrogation to establish a claim for relief. However, even assuming that it had the power to do so, there is no indication in the very lengthy and detailed NCLB statute that Congress intended, or even attempted, to abrogate the Commonwealth's Eleventh Amendment immunity. This view of the statutory language is bolstered not only by the absence in the text of any explicit attempt to abrogate the States' Eleventh Amendment immunity, but by the text itself, which provides for specific penalties in the event the States fail to comply with the terms of the statute. "This section of the statute contains no procedure for parents or students to seek

judicial, administrative, or any other remedies for alleged noncompliance with the dictates of the Act." ACORN, 269 F.Supp.2d at 342. "The only remedy the penalties provision provides in the case of a state's failure to comply is that 'the Secretary [of Education] may withhold funds for State administration under this part until the Secretary determines that the State has fulfilled those requirements.'" ACORN, 269 F. Supp. 2d at 342 (citation omitted). Consequently, under well-settled principles of Eleventh Amendment jurisprudence, this Complaint should be dismissed in its entirety against the MADOE.

### IV. EVEN IF PLAINTIFF HAD ALLEGED A COGNIZABLE VIOLATION OF FEDERAL LAW, AND EVEN IF THE ELEVENTH AMENDMENT DID NOT APPLY, NO PRIVATE RIGHT OF ACTION EXISTS UNDER NCLB.

Even if plaintiff had alleged a violation of NCLB, which she has not, and even if the Eleventh Amendment did not apply to bar her action against MADOE, which it does, NCLB does not create a private right of action for individuals. See Association of Community Organizations for Reform Now v. New York City Department of Education, 269 F. Supp. 2d 338 (S.D.N.Y. 2003). Consequently, her Complaint would require dismissal on that basis as well.

In ACORN, the district court applied the United States Supreme Court's analysis in Gonzaga University v. Doe, 536 U.S. 273 (2002) and determined that the notice and transfer provisions of NCLB do not create a private right of action that can be asserted by parents. The district court reasoned as follows: first, the notice and transfer provisions do not contain the kind of "rights-creating" language that the Supreme Court has deemed critical to showing the requisite congressional intent to create new rights. ACORN, 269 F.Supp.2d at 344. These NCLB provisions focus on regulating states and local educational agencies and not on conferring any direct benefit, entitlement or right upon individuals. 269 F.Supp.2d at 344. See also Long

Term Care Pharmacy Alliance v. Ferguson, 362 F.3d 50, 57 (1st Cir. 2004) (subsection 30(A) of the Medicaid Act has no rights creating language).

Second, the district court held that NCLB's transfer provisions have an aggregate focus and are not concerned with a particular individual student's ability to receive a benefit under the statute, demonstrating that Congress was concerned with improving the educational conditions of children as a whole rather than ensuring that each individual child was provided with a right to transfer out of a failing school. 269 F.Supp.2d at 345. See also Long Term Care Pharmacy Alliance, 362 F.3d at 57 (section 30(A) focuses upon the person regulated rather than the individuals protected). Third, the district court examined the enforcement provisions of the NCLB and determined that they indicated a congressional intent not to create individual rights. NCLB contains no provisions for individuals to enforce the notice and transfer provisions; the statute's enforcement provisions contemplate that the Secretary of Education will take any enforcement action that is deemed to be necessary. 269 F. Supp. 2d at 345. See also Long Term Care Pharmacy Alliance, 362 F.3d at 58 (section 30(A) does not provide explicit rights for providers; presence of explicit enforcement mechanism weighs against inferring private rights of action). The district court concluded,

> [t]hus, the [NCLB] does not reflect the clear and unambiguous
> intent of Congress to create individually enforceable rights.
> The statute lacks the necessary rights creating language, because
> it is focused on the regulation of states and local educational agencies,
> and focuses on improving the condition of children collectively,
> and therefore lacks the individual focus suggestive of Congressional
> intent to create personal rights. Finally, the enforcement scheme
> of the statute indicates a Congressional intent to centralize
> enforcement and thereby to avoid the possibility of individual lawsuits
> and multiple interpretations of provisions of the Act.

269 F.Supp.2d at 347.[4] The district court's analysis was clearly correct; consequently, plaintiff's Complaint should be dismissed in its entirety.

## CONCLUSION

For the reasons set forth above, the Massachusetts Department of Education respectfully requests that this Court dismiss plaintiff's Complaint with prejudice.

Respectfully submitted,

MASSACHUSETTS DEPARTMENT
OF EDUCATION

By its attorney,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Jane L. Willoughby
Jane L. Willoughby, BBO 555693
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of ~~record for each other party~~ Stephone Spikes, pro se, by mail ~~(by hand)~~ on 10/17/05.

Dated: October 17, 2005

---

[4] In addition to all of the above, to the extent that plaintiff may appear to attempt to assert some sort of special education claim, plaintiff has failed to exhaust her administrative remedies. See David D. v. Dartmouth School Committee, 775 F.2d 411, 424 (1st Cir. 1985), cert. denied, 475 U.S. 1140 (1986).

13